Good morning, Your Honors. I'm Christopher Johns and I'll represent the appellant, Mr. Evans. I will reserve time and I'll be clear to watch the clock here. Initially, Your Honor, procedurally, the government has violated Rule 28-2.8 and has done so on a number of instances. As set forth in the appellant's reply brief at pages 7 through 15, we've categorized each one of these violations. I did receive the government's letter to the court dated March 27, 2006, and I object to that letter and ask that it be stricken because, one, it's not a 28-J letter and, two, it's in the nature of a supplemental brief. Do you disagree with the concession in that letter? Did two officers make the observation or did three? Two officers made the observation. That's all I can see. What do you want to strike it for? Because I don't think it was done properly and because there were two other admissions that were not made by the government that should have been made. One, on the issue of the scratch marks, which go to their case. I would just suggest to you it's probably not going to carry the day for you one way or the other. We've read the briefs and we've read the records, so. Thank you, Your Honor. Okay. Point well taken. What do these additional authorities add to the case? Well, they do and they just came out last month, Your Honor. And what the two authorities do is that the first one, the Hagee authority, that goes to the Crawford violation and with regard to the second point that I was going to make with respect to the unavailability of Bernice Washington and the admission of the cell phone record. And the reason that I brought that to the Court's attention was that the government's correct. Non-testimonial record statements, they don't come under Crawford. But this case makes the point that the law is developing here, that the Supreme Court said in Crawford it did not set forth a comprehensive evaluation of what is testimonial and what is non-testimonial. Although it did make pointedly clear that business records are within the recognized common law exceptions. Yes, Your Honor, they did. And that's historically one of the exceptions, and that would be considered non-testimonial. We've submitted in this case that it should be considered testimonial because of the way that it was used. And it was used this way to impeach somebody, and the only person who could really attest to what that entry meant was not present, and that was Bernice Washington. And the reason Bernice Washington was not present was because the government failed to subpoena her. So my client suffered prejudice as a consequence of the government's failure to subpoena somebody when it came in, and it was prejudicial. The second citation, United States v. Blandin, Your Honor, that simply recaptured the plain error in the Crawford context. You know, is it prejudicial? Does it affect substantial rights? And I would submit that that cell phone record did affect substantial rights, that it was prejudicial to my client because my client had no way to rebut it. Well, it was impeaching the testimony of one of his alibi witnesses, wasn't it? It was offered for that purpose, Your Honor, but we had no way to meet it because that person was not there. Who called the alibi witness? That was DeJavon, and she was called by the defense to give testimony, and she did. So you said your argument is that we should hold that a telephone business record that impeaches the credibility of an alibi witness is prejudicial to your client, and therefore, what, that she can't be impeached by a business record? It should not have been admitted, Your Honor. It should not have been admitted for that purpose, and that was the only purpose the government offered it for. For impeachment? For impeachment. I'm trying to get my hands on a legal hook for that. What's the legal hook? It's a business record, all right? It is a record. So then the question is whether it's relevant or whether it has any probative value, and it was used to show that the telephone calls were made at a time inconsistent with her testimony that they were in a movie theater. Well, but that goes back to part of the problem, Your Honor. These people didn't sit next to each other. This was a cell phone record. That goes to the argument, doesn't it? I mean, she testified she was in a movie theater at the time at X time, right? Your Honor, I think the point is this, that the cell phone record was not of the alibi witness. I understand that. It was somebody who was supposedly with them. Someone who was supposedly with them? Correct, that was supposedly with them. She changed her testimony when confronted with the fact that somebody who was with them apparently made, what, a 23-minute phone call from outside the time that they were supposed to be in the theater? There's a reference that there's a 23-minute call. The only person who could attest to that call would have been the person who had the cell phone record, and that was Bernice Washington. She wasn't there. Well, that may be true, but the cell phone record showed that that cell phone made a call, and it was up to the witness to decide what to do with that information, and didn't she modify her story when confronted with that? I don't think so. Cited that they left the movie early because it was a boring movie? That's correct, Your Honor. And that was also, though, based on her going back and looking at the movie again. All right. So what's the prejudice to your client then, to the defendant? I'm sorry. You'll be answering the wrong question for that. I'm sorry. What is the prejudice to the defendant from having the telephone records admitted in evidence to show whatever they showed? They had no opportunity to confront Bernice Washington or to in any way explain this entry. It wasn't an entry made by the witness. It was an entry made by somebody else, and these two people, the testimony was they were at the movies, but they didn't sit together, so there's no way. How do we know it was made by somebody else as opposed to mechanically processed as part of a telephone billing process? We don't, Your Honor. So we don't know that somebody else did it one way or the other. We don't know how it was prepared. All we know is that there was somebody from the company that maintained the record that said that these are telephone bills prepared in the ordinary course of business, and that he responds to testimony complaints with respect to those billings. Correct? That's correct, Your Honor. The question is, is that sufficient to let the record into evidence? I didn't feel that way, Your Honor. I thought there was an issue. You say no. Yeah. Because you're saying that essentially it makes the cell phone a testifying witness in effect, that that phone was being used by somebody unknown, maybe its owner, maybe by somebody else. Is that it? That person, if in court, could have been examined as to when and where the phone call registered on that phone was actually made? That's correct, Your Honor. I think we have your point. The next point, Your Honor, obviously just goes to the sufficiency of the evidence. From my client's point of view, and I try to lay out it in the briefs, this is an extremely close case. I think your briefs do a good job of that. I think we have that. So the next point is, Your Honor, that there was this limitation on the cross-examination of Detective Sapple. And the question was, did he know what a throwdown was? And this went to the defense position with regard to possession. And whether it would have been possible under these circumstances, depending on the ---- Whether the officer knew the meaning of the term throwdown. Correct, Your Honor. To testify to that effect. What does that prove with respect to whether this weapon was or was not a throwdown? Well, it's one of the circumstantial pieces of evidence that would go to the nucleus of facts. This officer had already testified that as to the location of the gun, that it easily could have been placed there under the car. There were no prints on the gun that would go to my client, Mr. Evans. The officer found the gun. And if he had said that he knew what a throwdown was, that went back to what Detective Gormley had said, that a throwdown is when there's a government plant. If he says no, he's impeached because it would seem to be common knowledge that if Detective Gormley knew what a throwdown was, he would know what a throwdown is. That seems to be a colloquial expression that a police officer would use. Was that the argument you, in essence, made to the jury? That is that it's ---- Yes, that was an argument made to the jury. Everybody knows what a throwdown is. Well ---- What's the prejudice in not being able to get the answer that he knew? What would it materially have added to your impeachment case? It would have gone to the impeachment of the officer and a suggestion that there was a throwdown. There was a plant. Okay. And that was the point of that. Okay. And just finally, Your Honors, you're correct. I think there's a concession on the government side, but I don't want to hold them to it. There's an amyline remand. Yes, Your Honor. And your client is interested in that. Correct, Your Honor.   Can you move to the next item? Yes, Your Honor. Do you want the samples vacated or just simply reviewed by the district court to see whether it would make the same decision? I think, as I read the amyline, Your Honor, it would be a limited remand, and that would be the only basis. There's not a basis, I think, to vacate this sentence. There is a basis for a limited remand. Thank you. Good morning, Your Honor. Erica Frick on behalf of the United States. May it please the Court. This is not a closed case. As discussed in the briefs, the evidence here was more than sufficient to support the jury's verdict. The evidence showed, first of all, the only element that was contested was possession of a firearm, and two officers testified that upon the traffic stop, Mr. Evans made a throwing motion under the car, that a metallic sound was heard consistent with the gun, that after he ran away, within minutes thereafter, a firearm was recovered from the same place. His fingerprints weren't on the gun. Is that right? That's right, Your Honor. How do you explain that? Well, there was testimony that it's actually very common for firearms not to have any identifiable fingerprints on them. It did have an identifiable fingerprint. It had one, Your Honor, but the testimony that's in the record shows that because of the way firearms are made and the coatings that are put on them, they frequently don't have it, or they have limited fingerprints. The print that was on the gun was never identified, but it was just one partial print on the entire gun. Did they run it against any of the officers? They did, and they were never able to find a match. In addition to the fingerprint that was found, was based on when the tape was put on it to identify it as an exhibit? I'm sorry, Your Honor, I didn't understand the question. My understanding is that the print which they found was one that was made by whoever put the identifying tape for the exhibit. I would have to go back and double-check the record, but my understanding was that they had never actually found a match to the print that was there. It was a partial print. In addition to the evidence already summarized, the two officers were able to identify Evans in a photo lineup after the stop, and then there was also, of course, circumstantial evidence because he was the car owner. It was registered to him. There was a resume of his in the car and a receipt. That's all in the briefs. I think we do have that. So the evidence was more than sufficient. On the limitation of cross-examination, the question at issue was not, as the district court correctly held, that was not relevant. And even if it had been relevant, it didn't prejudice the defendant that the question was not asked. In this case, there was ample opportunity, and the defense counsel took advantage of it, to cross-examine Detective Sapal. The jury had ample opportunity to assess his credibility on related topics, such as lying and setting up suspects and other topics. He was also, Detective Sapal also answered a question that's remarkably similar to the excluded one, which is whether it would be pretty easy for someone to place a gun there. Without getting on their belly, they could have crouched down and put a gun there. And is that correct? And Detective Sapal answered, I would imagine so. So very similar to the question that was not permitted. And finally, on the admission of the cell phone billing record, there were two independently sufficient bases for admission here. One was, of course, Rule 612, which defense counsel has never addressed on appeal, and that is when something is used to refresh the recollection of the witness. And the other is the business. But that doesn't necessarily allow admitting the record itself. Well, Rule 612 actually states that if a witness uses a writing to refresh memory, and then I'm omitting some here, but that you're allowed to have the writing produced to inspect it, to cross-examine the witness, and to introduce in evidence those portions which relate. She was on the witness was on the stand, correct, not the owner of the cell phone, right? That's correct. Okay. So and then the question was posed by whom that elicited the use of the phone record to refresh recollection? By defense counsel, Your Honor. So he showed her the phone record? He asked her about the fact that she had been refreshed and he showed it to her. All right. Okay. That's right, Your Honor. And so when the defense counsel does that under Rule 612, that allows the admission of it into evidence. But an independently sufficient basis for admitting it was the business records exception. Well, what would be the relevance, though, to input the whole thing? If you didn't have the, arguably, the refreshing recollection, what's the relevance to have brought into affirmative evidence a phone record when the user of the telephone, the person who could respond and explain what the phone calls were about, wasn't available in court? Because Debbie Yvonne, who was testifying, had testified that Bernice Washington was at the movie theater during this time period, or at least her initial account of events had. But what if she had been available and had come in and said, I loaned it to my brother and he was making phone calls from this other location? Well, certainly, Your Honor, the defense also could have subpoenaed that witness and had her testify as such, although. Well, that doesn't get over the hearsay objection, does it? Well, of course, when it's a business record, it's not hearsay, and this was a business record. Oh, but then the question is whether it's relevant. Right. The whole record. I sure had a lot of trouble getting business records in when they weren't relevant. Your Honor, again, the government, whether or not someone could have been cross-examined had she been subpoenaed and appeared in court, doesn't really affect the relevance, which is that. I know it doesn't. Which is that Debbie Yvonne said that Washington was at the movie at this time, and this cell phone record. She didn't say her cell phone was at the movie. That's true, she didn't. But the cell phone record is still programed. I still don't understand your answer to Judge Fletcher's question. The cell phone record certainly could have been impeached if the defense counsel had brought a witness into court to do that, but that doesn't affect its relevance to show that it's unlikely or that it's less likely that Washington was at the movie, as Debbie stated. So you think the government, as part of its direct case, could have moved the admission of the business record cell phone without producing the owner of the phone? And just said, we're just allowed to put in the business record and the burden all shifts over to the defendant to call in the owner of the phone? Yes, Your Honor. I believe that the government would have been able to do that. Okay. If there are no further questions. Do you agree on the Ameline limited remand? I do, Your Honor. Okay, thank you. Thank you. Thank you. Thank you. I just have one point to respond to, Your Honor, and that's with regard to the identification of my client. The government noted that he was later identified in a photo ID lineup, and that is correct, but the two officers that identified him, no one could do that at the scene. They had just come off what was, after many hours, they were looking for him, and he had been the subject of interest in a special meeting they had when they went out in their special operations program. Okay, thank you. Counsel, further argument? The case just argued and submitted. The next argument on calendar is United States v. Walker.
judges: B. Fletcher, Beezer, Fisher